433 So.2d 1236 (1983)
Johnny Lee KIRKSEY, Appellant,
v.
STATE of Florida, Appellee.
No. ZZ-322.
District Court of Appeal of Florida, First District.
June 21, 1983.
Rehearing Denied July 26, 1983.
*1237 Melanie Ann Hines, Asst. Public Defender, Tallahassee, and Joseph J. Imperato, Legal Intern, Tallahassee, for appellant.
*1238 Jim Smith, Atty. Gen., and Lawrence A. Kaden, Asst. Atty. Gen., Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant raises six points on appeal to challenge a jury verdict and final judgment convicting him of attempted sexual battery, aggravated assault, and burglary with assault. The jury also found appellant guilty of kidnapping, but the trial court subsequently reduced the conviction to false imprisonment; the state cross appeals that reduction. We affirm all points on appeal and the cross appeal; point I, however, merits further discussion, as does the cross appeal.
The facts pertinent to our discussion of point I, and the cross appeal, show that on April 25, 1980, the victim was enjoying a day of sunning with friends at the Florida State University "Seminole Reservation" on Lake Bradford. At approximately 3:30 p.m., she entered the vacant ladies' restroom and dressing area; directly adjacent to a similar men's bath area. She was in a toilet stall for a few moments when the door to the stall burst open. The victim testified that her assailant put a cloth over her head, jammed a rag down her throat, grabbed her around the neck, and dragged her out of the stall. She was wedged up against his body and dragged approximately twenty feet down a hallway to a dressing area at the end of the bathroom, all the while her assailant repeating, "I'll kill you; I'll kill you." While the attacker was dragging her down the hall, he continued to jam the cloth deeper into her mouth and throat causing her to gag and restricting her breathing. Once they reached the area, she was forcibly pushed to the floor of a dressing booth where her assailant fumbled with her bathing suit bottom, which had fallen down around her knees. The victim testified that she experienced great pressure all over her body, which pressure suddenly lifted just before she blacked out. At that moment, she jumped up, threw the cloth off her head and pulled the rag from her throat. In this split second, before she ran out of the booth, she saw a black male standing on the dressing room ledge with his back to her, facing the window. Although she did not see his face, she was later able to identify appellant's clothing, worn on the day in question and introduced in evidence at the trial, as the clothing worn by her assailant.
The young lady who had entered the dressing booth and interrupted the attack, testified that upon hearing "low-toned screams that crescendoed as [she] reached the door," she pushed open the door to the ladies' bathroom and walked quietly inside so as not to be heard. She walked in the direction of the screams to the dressing booth, and pushed the door open; but before she could see inside, the door slammed in her face. Seconds later, the victim rushed past her crying hysterically, with only the top of her two-piece bathing suit on. Instead of following her out, the witness stood in the doorway to see who the "intruder" was. She observed a black male climbing out the window, with his back to her, and was able also to identify the clothing at trial.
In the meantime the victim ran out of the bathroom crying, "The man tried to rape me." When the witness emerged from the bathroom, she saw three or four young men rush toward her; she directed them to go around the building, telling them that a black man was climbing out the window. Two of the men circled the bathhouse and observed a black man squatting in the brush area behind the bathhouse under the window of the dressing booth where the assault occurred, picking up a bag and pulling up his pants. The man spotted them and a chase ensued. At trial one of the young men identified appellant as being the man behind the bathhouse and also identified the clothing as that worn by appellant on the day in question.
Meanwhile, another of the young men signaled two plainclothes policemen, Officers Doyle and Boydston, who were on a stakeout at the Reservation for auto theft, and advised them of a rape. Officer Doyle testified that around 4:00 p.m., while he and *1239 Officer Boydston were in their automobile, they heard screaming. Shortly thereafter a young man came running up to them, asked if they were policemen and stated that a girl had been raped. Doyle's reaction was to state, "We have a signal 32," the code for the crime of rape, and to pull the car around toward the bathhouse. In so doing, Doyle observed appellant running across the parking lot, with several men in hot pursuit screaming, "He's the one." Appellant was carrying a bundle under his arm and his pants were undone, requiring that he hold them up as he ran. Doyle leapt from his car and gave chase; although dressed in old clothes and not carrying a pistol, Doyle testified that he had a badge hooked on his belt.
When he apprehended appellant, Doyle placed him under arrest, but was at the same time accidentally kneed in the groin. Appellant put up no resistance, was allowed to fix his pants, was handcuffed and placed in the back seat of the car. Doyle testified that at that point he sat down to catch his breath and radio in to headquarters to notify them of the incident. Although he then read appellant his Miranda warnings, Doyle testified that he did not inform appellant of the cause of his arrest.
When Doyle subsequently allowed appellant to get out of the car, due to the heat and mosquitoes, he asked appellant whether they knew each other. Appellant agreed, recognizing Doyle as someone he had seen in a local night club where Doyle had worked a spare job. Then, according to Doyle, appellant paused and said, "I didn't mean to hurt her. I'm sorry. I'm having problems." Appellant was transported to the police station where he was booked and subsequently charged by information in count I with burglary of a structure (person assaulted); in count II with kidnapping with intent to facilitate a felony; in count III with attempted sexual battery; and, by amended information, in count IV with attempted murder.
At trial, a motion to determine the admissibility of appellant's statement to Officer Doyle was filed by the state and the defense filed a motion to suppress. Preceding presentation of the state's case and out of the presence of the jury, testimony was proffered and the suppression motion heard and denied. Following the state's case, the defense moved for directed verdicts of acquittal, which motions were denied; the motions were renewed at the close of all the evidence, and again denied. A verdict was rendered by the jury, finding appellant guilty and convicting him of counts I, II and III as charged, and of the lesser included offense of aggravated assault under count IV. At sentencing, the trial court reduced count II from kidnapping to false imprisonment, stating that the reduction was in lieu of his granting a new trial on the conviction for kidnapping, a procedure provided for by Rule 3.620, Florida Rules of Criminal Procedure.
Under point I, appellant argues that the trial court erred in denying his motion to suppress. His contention is based on the fact that Officer Doyle did not inform him at the time of his arrest, the cause of his arrest. Therefore, according to appellant, his arrest was illegal and his subsequent statement made to Doyle, the fruit of the illegal arrest, should be excluded under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The statute involved is Section 901.17, Florida Statutes (1979) which directs that a peace officer making a warrantless arrest
shall inform the person to be arrested of his authority and the cause of arrest except when the person flees or forcibly resists before the officer has an opportunity to inform him or when giving the information will imperil the arrest. (Emphasis added).
The issue presented by appellant is whether the failure to inform a person immediately of the cause of the arrest will result in that arrest being illegal. We need not reach that issue and its concomitant nuances,[1] *1240 however, because we conclude that the circumstances before us place this cause squarely within an exception to the rule.
Although Section 901.17 directs that the officer shall inform the person of the cause of the arrest, it also allows for exceptions. Pointing to the fact that the legislature substantially revised Section 901.17 in 1970, appellant contends that its intent was to delete the only exceptions arguably applicable to the facts of his case. We disagree. In its present revised form, the section lacks nothing of its original intent and purpose, if only its original verbosity.
Before it was amended in 1970, Section 901.17 read as follows:
When making an arrest without a warrant, the officer shall inform the person to be arrested of his authority and the cause of the arrest, unless the person to be arrested is then engaged in the commission of an offense, or is pursued immediately after its commission or after an escape, or flees or forcibly resists before the officer has opportunity so to inform him, or unless the giving of such information will imperil the arrest. (Emphasis added).
We find the emphasized language to apply to this case; the question, then, is whether the legislature, in revising the section, intended something other than to eradicate that exception.
One indicator of the legislature's intent is the title of the law enacting the statute, especially where, as here, "`the phraseology of the act is susceptible of more than one interpretation.'" Parker v. State, 406 So.2d 1089, 1092 (Fla. 1981). The title to Chapter 70-339, Laws of Florida, enacting the present Section 901.17, states in pertinent part:
AN ACT relating to criminal procedure; ... amending certain sections of present chapters 901 ... by . .. deleting obsolete and unnecessary language ...
The clear import of the title is that the phrase, "is pursued immediately after its commission," was at least unnecessary if not obsolete. We so conclude, as we note that "flees," as it appears in the present section, was also in the former.
However, apart from disagreeing with the initial premise that the legislature did not delete the exception in substance but revised it only in form, appellant would argue that the present section allows for only one exception  "escape and flight from the arresting officer." In order to reach this conclusion, as there is a dearth of case law on this issue, appellant presumably reads the phrase, "before the officer has an opportunity to inform him," as qualifying *1241 both "flees" and "forcibly resists." By so doing, the resulting phrase, "except when the person to be arrested flees before the officer has an opportunity to inform him," connotes, temporally, an exception only regarding escape. That is, only when an arresting officer first apprehends a person and that person then escapes (or resists) is the officer denied an opportunity, and relieved of the duty, to inform the person of the cause of arrest.
On the contrary, keeping in mind our initial premise concerning the legislative intent of this statutory amendment, we construe the term "flees" in the present Section 901.17 as including when a person "is pursued immediately after" the commission of a crime. We are aided by the statutory rule of construction known as the doctrine of the last antecedent, under which "`relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote' [citations omitted]." McKenzie Tank Lines, Inc. v. McCauley, 418 So.2d 1177, 1179-1180 (Fla. 1st DCA 1982).[2]
There is no doubt that the phrase, "before the officer has an opportunity to inform him," is a qualifying phrase. Consequently, we consider the exceptions to present Section 901.17 to be three:
(1) when the person flees;
(2) when the person forcibly resists before the officer has an opportunity to inform him; or
(3) when giving the information will imperil the arrest.
Under the facts of this case, appellant was placed first inside, then outside the dressing booth where the victim was assaulted. Appellant then fled the scene with a peace officer in hot pursuit. Thus, he was pursued immediately after the commission of an offense as contemplated by the statutory exception. Officer Doyle was not required to inform appellant of the cause of the arrest; obviously, under those circumstances, appellant was presumed to know the cause of the arrest. Accordingly, the arrest was legal and the statement was properly admitted.
We turn now to the state's cross appeal. Pursuant to Rule 3.620, Florida Rules of Criminal Procedure, the trial court ruled at sentencing, in lieu of a new trial, that the evidence did not sustain the verdict of kidnapping but was sufficient to sustain a finding of the lesser offense of false imprisonment. The state would now appeal that ruling on the basis of Rule 9.140(c)(1)(H), Florida Rules of Appellate Procedure, which permits the state to appeal an order, "[r]uling on a question of law when a convicted defendant appeals his judgment of conviction ..." We hold, however, that a ruling pursuant to Rule 3.620 is one of fact, not of law, and from which the state has no right of appeal under the rules. Accordingly, we now grant appellant's motion to dismiss the cross appeal, which motion was earlier ordered to be carried with the merits. The state's cross appeal is dismissed; as hereinabove recited, the other points raised on appeal are affirmed.
ROBERT P. SMITH, Jr., C.J., and SHIVERS, J., concur.
NOTES
[1] The statute utilizes the mandatory "shall" which would, at first glance, dictate nothing less than strict compliance. Moreover, the temporal nature of the exceptions would suggest that a person should be informed of the cause of the arrest at the time the arrest is made, that is, for example, when the person is first restrained of his or her liberty, or when read the Miranda warnings. Although our holding today is such that we need not reach these issues, two Florida decisions, and decisions in several other jurisdictions having similar statutes, would indicate a lesser standard. See Flowers v. State, 152 Fla. 649, 12 So.2d 772 (1943) (Brown, J. dissenting on other grounds) (failure to comply with 901.17 would not necessarily render a free and voluntary confession inadmissible in evidence); and City of Miami v. Nelson, 186 So.2d 535, n. 1 (Fla. 3d DCA 1966) (fact that person to be arrested is not informed of the cause of the arrest until subsequent thereto does not necessarily deprive him of his rights); see also United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (decided on other grounds, but in dicta, espoused effective compliance); United States v. Robinson, 325 F.2d 391 (2d Cir.1963) (substantial compliance test, eschewing a "ritualistic" approach); Holt v. State, 357 P.2d 574 (Okl.Cr. 1961), cert. denied, 366 U.S. 716, 81 S.Ct. 1659, 6 L.Ed.2d 846 (1961) (mere failure of a peace officer to expressly inform of cause of arrest will not render arrest illegal where person arrested knew officer and knew he was acting in official capacity); People v. Maddox, 46 Cal.2d 301, 294 P.2d 6 (Cal. 1956) (failure to inform of cause of arrest is unrelated and collateral to the securing of evidence incident to the arrest); Upshaw v. State, 350 So.2d 1358 (Miss. 1977) (failure to inform of cause of arrest shifts burden to state to show probable cause for arrest); State v. Fairbanks, 32 Ohio St.2d 34, 289 N.E.2d 352 (Ohio 1972) (failure to immediately inform of cause of arrest does not amount to denial of due process where person charged soon after taken into custody); State v. Erdmann, 292 N.W.2d 97 (S.D. 1980) (although similar statute repealed, in case in which it applied, no verbal ritual was required, and circumstances may afford sufficient notice of cause of arrest).
[2] Also, we note the general rule that "the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately. Hence, language in a clause following a disjunctive is considered inapplicable to the subject matter of the preceding clause." Quindlen v. Prudential Insurance Company of America, 482 F.2d 876, 879 (5th Cir.1973). Here, the disjunctive "or" sets off "flees" from "forcibly resists before the officer has an opportunity to inform him ..."