Mr. Gregory L. Coler Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32399-0700
Dear Secretary Coler:
You have asked substantially the following question:
 Does the Adult Protective Services Act, ss. 415.101-415.113, F.S., require that alleged abuse, neglect or exploitation of aged persons and disabled adults be investigated when the alleged perpetrator of the abuse, neglect or exploitation is someone other than the victim's caregiver?
In sum, I am of the following opinion:
 The Adult Protective Services Act, ss. 415.101-415.113, F.S., requires that all suspected cases of abuse, neglect or exploitation reported to the central abuse registry be investigated by the Department of Health and Rehabilitative Services, regardless of whether the perpetrator is the victim's caregiver.
You state that the Florida Abuse Registry currently accepts reports for adult protective investigation of aged persons or disabled adults who have been assaulted by individuals who have no caregiving responsibilities toward the victim. The question has arisen, however, whether such reports should be investigated, given that the definitions pertinent to the protection of aged persons and disabled adults require that the perpetrator be the caregiver[1] in some instances, but not in others.
The Adult Protective Services Act[2] (the act) provides for the detection and correction of abuse, neglect and exploitation of aged persons and disabled adults through social services and criminal investigation and establishes a program of protective services for such persons.[3] Pursuant to the act, the Department of Health and Rehabilitative Services (HRS) must establish and maintain a central abuse registry and tracking system which receives all reports made under the act.[4]
The act requires any person who knows or has reasonable cause to suspect that an aged person or disabled adult is an abused, neglected, or exploited person to immediately report such knowledge or suspicion to the central abuse registry.[5] Upon receiving a report of alleged abuse, neglect or exploitation, HRS must, within twenty-four hours, commence a protective services investigation of the alleged facts. Furthermore, for each report received, HRS is required to perform an onsite investigation to
 [d]etermine whether there is an indication that any aged person or disabled adult is abused, neglected, or exploited, including a determination of harm or threatened harm to any aged person or disabled adult; the nature and extent of present or prior injuries, abuse, or neglect, and any evidence thereof; and a determination as to the person or persons apparently responsible for the abuse, neglect, or exploitation, including the name, address, date of birth, social security number, sex, and race of each person to be classified as an alleged perpetrator in a confirmed report.[6]
If during the investigation it is believed that the abuse, neglect or exploitation was perpetrated by a party other than the aged person or disabled adult, the appropriate criminal justice agency and state attorney shall be orally notified in order for such agencies to begin a concurrent criminal investigation.[7]
Thus, the act contemplates that any person who suspects that an aged person or disabled adult is the victim of abuse, neglect or exploitation must report the activity to the central abuse registry. Moreover, the reported incident must be investigated within twenty-four hours of its being received by HRS.
As used in the act, the following definitions are provided:
 (1) "Abuse" means the infliction of physical or psychological injury to an aged person or disabled adult, or the failure of a caregiver to take reasonable measures to prevent the occurrence of physical or psychological injury to an aged person or disabled adult.
* * *
 (9) "Exploitation" means, but is not limited to, the improper or illegal use or management of an aged person's or disabled adult's funds, assets, or property, or the use of an aged person's or disabled adult's power of attorney or guardianship for other's or one's own profit or advantage.[8]
* * *
 (13) "Neglect" means the failure or omission on the part of the caregiver or aged person or disabled adult to provide the care and services necessary to maintain the physical and mental health of an aged person or disabled adult, including, but not limited to, food, clothing, medicine, shelter, supervision, and medical services, that a prudent person would deem essential for the well-being of an aged person or disabled adult.[9]
Thus, an allegation of "neglect" by definition involves a failure or omission on the part of the person responsible for the care of an aged person or disabled adult to provide necessary care and services and extends to the care aged persons and disabled adults provide to themselves. An allegation of "abuse" or "exploitation," however, does not implicitly require that the abuse or exploitation be perpetrated by the caregiver, nor does the act impose such a requirement.
While the term "abuse" includes the failure of a caregiver to take reasonable measures to prevent an occurence of physical or psychological injury to an aged person or disabled adult, the failure by the caregiver to prevent such injury is separate and distinct from the infliction of physical or psychological injury upon the aged person or disabled adult by anyone, including the caregiver or the victim. As such, it is an alternative which is to be treated separately.[10] Thus, I am unable to conclude that "abuse" is limited to physical or psychological injury perpetrated by the victim's caregiver.
I have not found, nor have you provided, any statutory provision limiting HRS's responsibility or granting HRS authority to investigate only those instances of abuse, neglect or exploitation perpetrated by the victim's caregiver.
The Legislature has directed how HRS is to accept and investigate all reports made to the central abuse registry. In light of this direction, I am unable to conclude that HRS may limit its investigation only to those incidents in which the caregiver is the perpetrator of the abuse or exploitation.[11]
Accordingly, it is my opinion that all reports made to the central abuse registry must be investigated by HRS, regardless of whether the perpetrator is the victim's caregiver.
Sincerely,
Robert A. Butterworth Attorney General
(ls)
[1] Section 415.102(4), F.S., as amended by s. 26, Ch. 89-294, Laws of Florida, defines "[c]aregiver" as a "person or persons responsible for the care of an aged person or disabled adult . . . [and] includes, but is not limited to, relatives, adult children, parents, neighbors, day care personnel, adult foster home sponsors, personnel of public and private institutions and facilities, nursing homes, adult congregate living facilities, and state institutions who have voluntarily assumed the care of an aged person or disabled adult or have been entrusted with the care of an aged person or disabled adult on a temporary or permanent basis."
[2] Sections 415.101-415.113, F.S.
[3] See, s. 415.101(2), F.S., expressing the legislative intent of the act.
[4] Section 415.103(3)(a), F.S. (1988 Supp.)
[5] Section 415.103(1), F.S., as amended by s. 27, Ch. 89-294, Laws of Florida.
[6] Section 415.104(1)(c), F.S., as amended by s. 28, Ch. 89-294, Laws of Florida.
[7] Section 415.104(1), F.S., as amended by s. 28, Ch. 89-294, Laws of Florida.
[8] Section 415.102, F.S., as amended by s. 26, Ch. 89-294, Laws of Florida.
[9] Section 415.102(13), F.S.
[10] See, Kirksey v. State, 433 So.2d 1236 (1 D.C.A.Fla., 1983).
[11] See, Alsop v. Pierce, 19 So.2d 799, 805 (Fla. 1944) (legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way).