920 So.2d 1235 (2006)
Lawanna GELZER and Kenneth A. Mulvaney, Appellants,
v.
Phillip DIAMOND, Jose Fernandez, et al., Appellees.
No. 5D05-1853.
District Court of Appeal of Florida, Fifth District.
February 24, 2006.
Frederic B. O'Neal, Windermere, for Appellants.
*1236 David B. King and Thomas A. Zehnder of King, Blackwell, Downs & Zehnder, P.A., Orlando, for Appellees Phillip Diamond, Jose Fernandez and Daisy Lynum, as members of the Elections Canvassing Board of The City of Orlando, Florida.
Darryl M. Bloodworth and Nichole M. Mooney of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for Appellee, John H. "Buddy" Dyer, Jr.
Christopher V. Carlyle, Shannon McLin Carlyle and Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, for Appellee, Earnest Page.
MONACO, J.
This case grows out of the mayoral and city council elections held in March of 2004, in the City of Orlando. Appellants, Lawanna Gelzer and Kenneth Mulvaney (the "Challengers"), contest the order of the trial court granting summary final judgment in favor of the Appellees, Phillip Diamond, Jose Fernandez, and Daisy Lynum, as members of the Elections Canvassing Board of the City of Orlando (Canvassing Board), and John H. "Buddy" Dyer and Ernest Page (the "Incumbents"). Mr. Mulvaney and Mr. Dyer, along with three other persons who are not parties to this suit, were candidates for the position of mayor, and Ms. Gelzer, Mr. Page and one other person were candidates for the position on the Orlando City Council. The Challengers assert that a number of the absentee ballots voted in these elections were mailed to the Supervisor of Elections in violation of a provision within the city election ordinance. Accordingly, they argue that all of the absentee ballots should be disqualified, and the election determined on the basis of the results of the machine votes alone. To do so would require a run-off election between Mr. Mulvaney and Mr. Dyer in the mayor's race, and between Ms. Gelzer and Mr. Page for the City Council seat. The trial court, however, disagreed with the Challengers and granted a summary judgment in favor of the Canvassing Board and the Incumbents. We find no error and affirm.
The essential facts are not controverted. During the course of the election contest, Mr. Dyer hired an election consultant, Ezzie Thomas, to "get out the vote" in African-American communities. Mr. Thomas encouraged voters to request, obtain and submit their absentee ballots, and apparently offered instruction on how to correctly mark and seal the absentee ballots. In addition, he personally witnessed approximately 270 signatures on the return envelopes, and mailed the absentee ballots when voters so requested. Mr. Thomas admitted in one instance to assisting a blind voter in voting his ballot, but swore that he never opened or looked inside any other ballot, never changed or inserted any votes, and never discarded any absentee ballot.
Mr. Thomas was assisted in this enterprise by four volunteer campaign workers. Each of the volunteer workers signed sworn affidavits in which they admitted that they had witnessed the signatures of absentee voters, and mailed the absentee ballots when so requested by the voters. Prior to the date of the election, the Supervisor of Elections published some electoral advertising to the effect that the public had a right to inspect absentee ballots. Appellant Mulvaney attended but protested only one ballot witnessed by Mr. Thomas.
Mr. Dyer and Mr. Page were reelected to the positions of mayor and city council person, respectively. The certified election results reported that of the 24,375 votes cast in the mayoral election, Mr. Dyer received 12,422 votes, 234 more than the 50% needed to avoid a run-off. By *1237 machine vote, he received 9,779 votes, or 49.84%, and by absentee ballot he received 2,643 votes, or 55.54% of the vote.[1]
In the District 6 City Council election, 3,396 votes were cast, of which 1,705 were cast for Mr. Page. He received 1,180, or 47.24% of the machine vote, and 515 or 57.99% of the absentee vote. Mr. Page had a 21% margin of victory over Ms. Gelzer, and he received 7 votes more than he needed to avoid a run-off.
Following the election, the Challengers filed separate actions contesting the results based on the mailing of absentee ballots by Mr. Thomas and his associates, which according to their theory, violated section 21.18(B)(2) of the Orlando City Code. That ordinance reads:
An absentee ballot not cast in person must be mailed or delivered directly to the Supervisor of Elections by the elector or the elector's designee, and not to any other person, group or entity.
After the pleadings were closed, both sides moved for summary judgment. In support of its motion for summary judgment, the Canvassing Board submitted a lengthy appendix with many affidavits and supporting documents. Among the affidavits were those of voters who received assistance from Mr. Thomas in casting their absentee votes. More than 200 voter affidavits indicated that the individual voter marked his or her own absentee ballot, sealed it in the envelope provided, signed it with Mr. Thomas as the witness, and asked Mr. Thomas to mail it for them. The affiants also indicated that Mr. Thomas and his volunteer associates did not try to influence their votes.
The Canvassing Board's appendix also contains a transcript from the October 29, 2001, Orlando City Council meeting at which City Ordinance section 21.18 was adopted. At this meeting, Amy Iennaco, an assistant city attorney and the person responsible for drafting section 21.18, explained that the ordinance authorized three ways for an absentee voter to return the ballot. The ballot could be: mailed; delivered directly by the elector to the Supervisor of Elections; or delivered directly by the elector's designee to the Supervisor of Elections. A person could act as a designee, however, for no more than two ballots. One council member specifically asked whether it would be illegal for someone to pick up and mail a ballot for a senior citizen, and Ms. Iennaco and Commissioner Lymon, a sitting member of the City Council, both explained that it does not matter who physically puts the absentee ballot in the mail.
The trial court granted summary final judgment in favor of the Canvassing Board and the Incumbents. The court concluded that section 21.18 is plain and clear in its meaning, and that it permits "another individual to mail voters' absentee ballots to supervisors of elections." Citing Quindlen v. Prudential Ins. Co. of Am., 482 F.2d 876 (5th Cir.1973), the trial court explained that statutes employing a disjunctive are generally construed to treat the alternative clauses separately; meaning that the language in a clause following a disjunctive word or phrase is inapplicable to the subject of the preceding clause. Additionally, citing Kirksey v. State, 433 So.2d 1236 (Fla. 1st DCA 1983), petition for review denied, 446 So.2d 100 (Fla.1984), the trial court noted that under the "doctrine of the last antecedent," courts construe qualifying words, phrases, and clauses to apply to the words or phrases immediately preceding *1238 them, and not to other words or phrases that are more remote. Finally, the trial court held that even if the provision is ambiguous, the legislative intent behind section 21.18(B)(2) would still lead to the same result: that ballots mailed by people other than the voter are not invalid. The Challengers appeal this judgment.
Summary judgment may only be granted if the pleadings, discovery on file, and any affidavits properly filed by the parties reflect that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law. See rule 1.510(c), Fla. R. Civ. P. A party moving for summary judgment must show conclusively that there is no genuine issue of material fact, and the court must draw every possible inference in favor of the nonmoving party. See Kitchen v. Ebonite Recreation Ctrs., Inc., 856 So.2d 1083, 1085 (Fla. 5th DCA 2003). We review the grant of a summary judgment using a de novo standard. Major League Baseball v. Morsani, 790 So.2d 1071 (Fla. 2001).
The Challengers urge that section 21.18(B)(2) should be read to prohibit anyone other than the voter from physically mailing an absentee ballot to the Supervisor of Elections. They suggest that the phrase, "and not to any other person, group or entity" should be read in consonance with "mailed." The Incumbents argue conversely that everything after the word, "mailed," applies only to delivery of an absentee ballot to the Supervisor of Elections. Thus, under their theory, anyone can mail a ballot for an absentee voter. Although the parties disagree regarding the interpretation of section 21.18(B)(2), the trial court found that the ordinance is not ambiguous, and that its clear meaning does not require voters to mail the ballots personally.
While the trial court's interpretation of section 21.18(B)(2) is certainly reasonable and logical, we cannot help but observe that the provision is not a model of clarity. It is arguably susceptible to the two interpretations placed on it by the parties. In circumstances in which the meaning of a legislative enactment is ambiguous, we generally look to its legislative history to determine the intention of the legislative body in enacting it. See, e.g., Rollins v. Pizzarelli, 761 So.2d 294 (Fla. 2000). As the trial court correctly pointed out, all of the legislative history of the ordinance clearly supports the view that anyone may lawfully put an absentee ballot in the mailbox at the request of a voter. Indeed, even the Challengers appear to agree that if the ordinance is ambiguous, and legislative intention becomes the issue, they lose. Thus, we conclude that under section 21.18(B)(2) the absentee ballots mailed by Mr. Thomas could lawfully be counted, and that the trial court properly granted summary judgment in favor of the Canvassing Board and the Incumbents.
In Boardman v. Esteva, 323 So.2d 259, 269 (Fla.1975), cert. denied, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976), the Florida Supreme Court wrote that "the primary consideration of an election contest is whether the will of the people has been effected." Nothing has been brought to our attention which causes us doubt in this regard. Although the Challengers have raised a number of other issues, we find no merit to them. Accordingly, the judgment is affirmed.
AFFIRMED.
PLEUS, C.J., and TORPY, J., concur.
NOTES
[1] We note that if only the ballots that were touched by Mr. Thomas and his associates were disqualified, Mr. Dyer would still have sufficient votes to have won the election without a runoff. This, however, would not be true with respect to Mr. Page.