On behalf of the City of Deltona, you have asked for my opinion on substantially the following question:
When a municipality contracts for professional services pursuant to section 287.055, Florida Statutes, is the transaction controlled by the amount in section 287.055(2)(g), Florida Statutes, relating to continuing contracts, or by section 287.055(3)(a)(1), Florida Statutes, requiring public announcement and providing qualification procedures for certain threshold amounts?
According to your letter, the City of Deltona is in the process of contracting with multiple professional services providers and would like to establish a contractual hourly fee schedule agreement for these professional services as various projects are identified throughout the year. You have asked whether there is a conflict between two provisions of section 287.055, Florida Statutes, subsections (2)(g) and (3)(a)(1).
The Consultants' Competitive Negotiation Act (CCNA), section 287.055, Florida Statutes, sets forth requirements for the procurement and contracting of professional architectural, engineering, landscape architectural, or land surveying services[1] by governmental agencies.[2] Pursuant to the act, an agency, including a municipality, must competitively select and negotiate with the most qualified firm to provide these professional services for a project.[3] The statute also provides that "[n]othing in this act shall be construed to prohibit a continuing contract between a firm and an agency."[4]
Section 287.055(3), Florida Statutes, operates to require an agency, including a municipality, to follow certain procedures for announcing occasions when professional services are required to be purchased and for certifying firms or individuals desiring to provide such services as qualified. The statute directs agencies to adopt administrative procedures for the evaluation of professional services.[5] An agency is required to publicly announce each occasion when professional services are required to be purchased for a project covered by the statute.[6]
Section 287.055(4), Florida Statutes, states that an agency must evaluate firms that offer to provide professional services for a proposed project and select no fewer than three firms that are deemed to be the most highly qualified to perform the required services.[7] The statute provides criteria for evaluating the qualifications of these firms and prohibits the consideration of compensation until after the three most qualified firms are selected:
"In determining whether a firm is qualified, the agency shall consider such factors as the ability of professional personnel; whether a firm is a certified minority business enterprise; past performance; willingness to meet time and budget requirements; location; recent, current, and projected workloads of the firms; and the volume of work previously awarded to each firm by the agency, with the object of effecting an equitable distribution of contracts among qualified firms, provided such distribution does not violate the principle of selection of the most highly qualified firms. The agency may request, accept, and consider proposals for the compensation to be paid under the contract only during competitive negotiations under subsection (5)."[8]
The act requires that the agency negotiate a contract with the most qualified firm at a compensation level determined to be fair, competitive and reasonable. To make this determination, "the agency shall conduct a detailed analysis of the cost of the professional services required in addition to considering their scope and complexity."[9] If the agency is unable to negotiate a satisfactory contract with the most qualified firm at a price that the agency determines to be fair, competitive and reasonable, negotiations with that firm are terminated and the agency must undertake negotiations with the second most qualified firm.[10] This procedure is followed until an agreement is reached.[11] As this office noted in Attorney General's Opinion 88-42, a process that establishes a fee for proposed professional services prior to the initiation of the other steps required by section 287.055, Florida Statutes, would not comply with the requirements of the act, which mandates a project-by-project selection and negotiation process.[12]
A "continuing contract" is defined in section 287.055(2)(g), Florida Statutes, as:
"[A] contract for professional services entered into in accordance with all the procedures of this act between an agency and a firm whereby the firm provides professional services to the agency for projects in which construction costs do not exceed $1 million, for study activity when the fee for such professional service does not exceed $50,000, or for work of a specified nature as outlined in the contract required by the agency, with no time limitation except that the contract must provide a termination clause. . . ."
Section 287.055(2)(g), Florida Statutes, distinguishes: 1) projects in which construction costs do not exceed $1 million; 2) a study activity when the fee for such service does not exceed $50,000; or 3) work of a specified nature as provided in the contract with no time limitation except for a termination clause. The word "or" is generally construed in the disjunctive when it is used in a statute or rule and normally indicates that alternatives were intended.[13]
Based on these considerations, Attorney General Opinion 96-52 concluded that section 287.055(2)(g), Florida Statutes, authorizes an exemption from the competitive bidding and negotiation requirements of the act for either a study activity with a fee of up to $25,000 or for work of a specified nature with no time limitation. Either of these two activities may be the subject of a continuing contract, but a narrow reading of the exception would not permit the combination of these into one continuing contract.[14] Thus, if a municipality determines that it is appropriate to develop criteria for determining which firm under continuing contract with the city will be selected to perform a project, it may do so.[15] However, the opinion suggests that it may be advisable for a city to adopt an ordinance or develop an administrative rule of procedure to ensure that these criteria are applied uniformly to all continuing contracts into which the city enters.
Nothing in section 287.055, Florida Statutes, purports to regulate the terms of a continuing contract.[16] The continuing contract provision of section 287.055, Florida Statutes, represents an exception to the general competitive bidding provisions of the act and should be read narrowly and utilized sparingly in order to avoid an appearance of circumventing the requirements of the statute.[17]
Therefore, it is my opinion that the competitive negotiation process and the process for continuing contracts represent separate and distinct aspects of the Consultants' Competitive Negotiation Act. The limits contained in section 287.055(2)(g), Florida Statutes, relate to continuing contracts, as defined therein, and the monetary limits of section 287.055(3)(a)(1), relate specifically to competitive negotiations conducted pursuant to subsection (5). These subsections of the CCNA do not conflict; rather the continuing contract provisions constitute an exception to the broader competitive negotiation procedures of the act.
[1] See s. 287.055(2)(a), Fla. Stat., defining "[p]rofessional services."
[2] See s. 287.055(2)(b), Fla. Stat., which defines "[a]gency" as "the state, a state agency, a municipality, a political subdivision, a school district or a school board."
[3] Section 287.055(4) and (5), Fla. Stat.
[4] Section 287.055(4)(d), Fla. Stat.
[5] See s. 287.055(2)(a) and (b), Fla. Stat., respectively defining "[p]rofessional services" and "[a]gency."
[6] Section 287.055(3), Fla. Stat.
[7] See s. 287.055(4)(c), Fla. Stat., setting forth exceptions to the application of the statute.
[8] Section 287.055(4)(c).
[9] Section 287.055(5)(a), Fla. Stat.
[10] Section 287.055(5)(b), Fla. Stat.
[11] Section 287.055(5)(c), Fla. Stat.
[12] See Alsop v. Pierce, 19 So. 2d 799, 805 (Fla. 1944) ("When the Legislature has prescribed the mode, that mode must be observed.").Cf., City of Jacksonville v. Reynolds, Smith Hills, Architects,Engineers Planners, Inc., 424 So. 2d 63 (Fla. 1st DCA 1982), in which the court recognizes that budget considerations may be a factor in selecting the covered professional services.
[13] Sparkman v. McClure, 498 So. 2d 892 (Fla. 1986). And seeTelophase Society of Florida, Inc., v. State Board of Funeral Directorsand Embalmers, 334 So. 2d 563, 564 (Fla. 1976) (word "or" when used in a statute is generally to be construed in the disjunctive); Kirksey v.State, 433 So. 2d 1236, 1237 (Fla. 1st DCA 1983) (generally, use of disjunctive in statute indicates alternatives and requires that such alternatives be treated separately); Linkous v. Department ofProfessional Regulation, 417 So. 2d 802 (Fla. 5th DCA 1982).
[14] And see Op. Att'y Gen. Fla. 93-56 (1993), wherein it is concluded that the CCNA does not provide criteria for negotiating a contract for professional services under a continuing contract and a municipality may develop its own procedures for evaluating such a contract.
[15] Cf., Marriott Corporation v. Metropolitan Dade County,383 So. 2d 662, 663 (Fla. 3d DCA 1980), which recognizes that even under competitive bidding requirements contracts must be awarded as a function of the reasonable exercise of power by municipal governmental authorities as a mater of public policy and fidelity to the public trust; William A. Berbusee, Jr., Incorporated v. North Broward HospitalDistrict, 117 So. 2d 550 (Fla. 2d DCA 1960) (where statute requires that public body award contracts to low bidder, proper municipal authorities have wide discretion in determination of lowest responsible bidder).
[16] See Ops. Att'y Gen. Fla. 96-52 (1996) and 93-56 (1993) noting that nothing in s. 287.055, Fla. Stat., regulates the terms of a continuing contract and concluding that a municipality may develop criteria for determining which firm under continuing contract with the city will be selected to perform a project.
[17] Cf., City of Lynn Haven v. Bay County Council of RegisteredArchitects, Inc., 528 So. 2d 1244, 1246 (Fla. 1st DCA 1988) in which the court determined that the City's procedures contravened the legislative intent and undermined the effectiveness of the CCNA. Specifically, the City's bidding procedure would not have effectuated an equitable distribution of contracts among the most qualified firms pursuant to section 287.055(4), Fla. Stat. And see Op. Att'y Gen. Fla. 93-56 (1993).